**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PRESTON PIAZZA, | : | Civil No. 1:21-CV-00380 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDNET KEVIN | : | |
| KAUFFMAN, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Before the court is Defendant's motion for summary judgment. (Doc. 16.) Plaintiff failed to properly allege that there is no genuine dispute as to any material fact in regard to the matters before the court. Therefore, none of Plaintiff's claims will survive Defendant's motion for summary judgment. Defendant's motion will be granted, judgment will be entered against Plaintiff, and the case will be closed.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initiated this 42 U.S.C. § 1983 action in March of 2021 by filing a complaint naming Kevin Kauffman, the Superintendent at SCI-Huntingdon, as the only defendant in the action. (Doc. 1.) In his complaint, Plaintiff alleges that while he was held at SCI-Albion, he was issued a misconduct report (B043042) stating that Plaintiff conspired with other inmates to bring drugs into the facility. (Doc. 1, p. 4.)[1] The complaint alleges that the misconduct reports states that his

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

wife, Racheal Piazza, was involved in the conspiracy.  (*Id.*)  Allegedly the misconduct report states that Plaintiff called his wife to ask if she had spoken with Betty White and that the contact lenses were sent, there was a dollar amount discussed and whether or not "Aunt Linda" had receive the mail yet.  (*Id.*)  Plaintiff also allegedly asked his wife if she could send an inmate in the restricted housing unit ("RHU") some crossword puzzles.  (*Id.*)

Plaintiff alleges that on July 21, 2017, the hearing examiner dismissed charge 37, violating the visiting rules, but he pled guilty to charge 29, engaging or encouraging unauthorized group activity, charge 40, unauthorized use of mail or telephone, and charge 41, failure to report the presence of contraband.  (*Id.*, p. 6.) Plaintiff alleges that no contraband was found or introduced into the institution and alleges that there are no legitimate penological reasons to permanently ban his visitation rights.  (*Id.*)

Based on this, Plaintiff was placed in the RHU and his visiting privileges were suspended "pending a review after two years."  (*Id.*, p. 4.)  Plaintiff alleges that he reapplied to reinstate his visiting privileges after two years, but his request was denied.  (*Id.*)

Plaintiff alleges that he was then transferred to SCI-Huntingdon and after the expiration of the 12-month period, he reapplied for reinstatement of his visiting

privileges, but Defendant disagreed with the reinstatement, stating that Plaintiff's restrictions were now "permanent" and unreviewable.  (*Id.*, p, 5.)

Plaintiff alleges that the Superintendent from SCI-Albion stated that "a ban being lifted once an inmate has been transferred would be at the discretion of the current Superintendent."  (*Id.*)  Plaintiff alleges that on August 29, 2019 and March 23, 2020, he submitted two DC-135A Request to Staff addressed to Defendant requesting reinstatement of visiting privileges, but Defendant "arbitrarily" denied his requests.  (*Id.*, p. 6.)

Plaintiff alleges that on August 22, 2018, he received correspondence from Secretary Wetzel's assistant stating that "[t]he decision to approve visitation and visitors is made at the institutional level," and the Secretary's office would not intercede in the process.  (*Id.*, pp. 5–6.)  Likewise, Plaintiff alleges that on September 22, 2020, he received correspondence from the Executive Deputy Secretary's assistant stating that "[t]he decision to approve or deny visiting privileges is conducted at the institutional level by the Superintendent, not by Central Office."  (*Id.*, p. 6.)

Plaintiff further alleges that Defendant treated him differently than other inmates.  (*Id.*, p. 7.)  Specifically, Plaintiff alleges that another inmate, Miguel Molina, was transferred into SCI-Huntingdon and his visitation rights were

reinstated despite Defendant's knowledge that he had a conviction of smuggling drugs into another SCI facility.  (*Id*.)

Plaintiff alleges that he used the Prison's grievance system to try and resolve the problem, but his concerns were not addressed to his satisfaction.  (*Id*.)

Based on the above allegations in the complaint, Plaintiff brought a First Amendment freedom of association claim for interfering with his visitation rights with his children, a First Amendment equal protection claim, a Fourteenth Amendment due process claim, and a state law claim of intentional infliction of emotional distress.  (*Id*., pp. 7–10.)  As relief, Plaintiff seeks an injunction enjoining Defendant to immediately correct the constitutional violations, a declaratory judgment with respect to the constitutional violations, monetary compensatory, and punitive damages.  (*Id*., p. 10.)

**JURISDICTION AND VENUE**

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Huntingdon, located in Huntingdon County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

**A. There is no dispute of material fact in this action.**

In support of his motion for summary judgment, Defendant attached documents associated with Misconduct B043042, Grievance 694108, Grievance 777504, Grievance 833310, and Plaintiff's requests to staff members.  (Doc. 17.)  In his response and sur-reply, Defendant failed to demonstrate any issue of material fact.

As discussed above, at the summary judgment stage, the non-moving party, must oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89.  Plaintiff's sole response to Defendant's motion and brief in support is merely an assertion that there is an issue of material fact as to whether his wife brought drugs into the facility at SCI-Albion.  (Docs. 24, 26.)  However, the issue before the court is not whether or not his wife brought drugs into an SCI facility, but whether or not Defendant violated Plaintiff's constitutional rights when he banned Plaintiff's wife's visitation privileges.  As such, Plaintiff has failed to present any defense against Defendant's motion, and the statement of facts presented by Defendant is deemed admitted.  *See Selective Insurance Company of America v. Novitsky*, No.

3:17-CV-2376, 2019 WL 1009389, at *1 (M.D. Pa. Mar. 1, 2019) ("responsive

statements which do not contradict the veracity of the statements of fact are to be

deemed admitted").

The court will now summarize the facts set forth by Defendant that are

undisputed by Plaintiff.

### 1. Misconduct B043042 and Resulting Visitation Ban

On July 32, 2017, Plaintiff was found guilty of engaging in or encouraging

unauthorized group activity, unauthorized use of the mail or telephone, and failure

to report the presence of contraband.  (Doc. 17-1, p. 2.)  He was sanctioned with

the loss of his job and "90DDC."  (*Id.*)  He appealed the misconduct arguing that

the punishment was disproportionate to the offense.  (*Id.*)  The Program Review

Committee found the sanction to be in accord with DC-ADM 801 and sustained

the misconduct and the sanctions on August 1, 2017.  (*Id.*)

On August 4, 2017, Rachel Piazza was sent a letter from the Superintendent

at SCI-Albion informing her that she was permanently banned from visiting any

Department of Corrections facility.  (Doc. 17-3, p. 2.)  On March 16, 2018, Rachel

Piazza requested to have the permanent ban lifted.  (Doc. 17-5, p. 2.)  On March

22, 2018, the Superintendent at SCI-Albion sent a letter to Rachel Piazza

informing her that Plaintiff was no longer housed at SCI-Albion, "so it is his

current facility that can at some point review and reconsider if reinstatement of

your visitation with him has merit." (*Id*., p. 1.)  The letter further stated that "I have no question about the validity of our concerns, Ms. Piazza.  I hope that the two of you reevaluate your lives, certainly for nothing else, the benefit of your children.  It is unfair that they are not able to see their Father." (*Id*.)

Plaintiff was transferred to SCI-Huntingdon on May 21, 2019.  (Doc. 17-7, p. 3.)  Defendant presented an affidavit from Captain Stevens asserting that Rachel Smith visited Plaintiff several time at SCI-Huntingdon in violation of the ban by identifying herself as Rachel Smith.  (*Id*.)  After discovering her true identity, she was again banned from visiting Plaintiff.  (*Id*.)  Additionally, the affidavit states that while housed at SCI-Huntingdon, Plaintiff was in possession of drugs or provided urine samples that tested positive for drugs.  (*Id*.)

On September 4, 2019, Plaintiff sent a letter to the Superintendent of SCI-Albion requesting that his wife's visitation ban be lifted.  (Doc. 17-11, p. 3.)  The Superintendent of SCI-Albion sent Plaintiff a letter on October 17, 2019 stating that lifting the ban was at the discretion of the Superintendent of the facility where he was housed.  (*Id*., p. 2.)

On April 16, 2020, Plaintiff again wrote the Superintendent at SCI-Albion requesting that his wife's visitation ban be lifted.  (Doc. 17-12, p. 3.)  on April 23, 2020, the Superintendent at SCI-Albion stated that he had contacted the Security Office at SCI-Huntingdon and "[i]t is clear to me that you are still engaged in some

9

questionable activities while incarcerated at your current facility," and stated that he was unwilling to lift the suspension at this time.  (*Id.*, p. 2.)

Defendant also provided an affidavit from Sergeant Westover, who is stationed at the visiting room at SCI-Huntingdon.  (Doc. 17-15.)  Sergeant Westover confirmed that Plaintiff's minor children can visit him with three other guardians that are not his wife.  (*Id.*)

### 2.  Grievance 694108

On August 30, 2017, Plaintiff filed Grievance 694108 alleging that he and Rachel Piazza did not violate any visiting rules.  (Doc. 17-6, p. 2.)  He requested that the visitation ban be lifted or that he be paid $1,000,000.00.  (*Id.*)  In the grievance, he stated that Lieutenant Anderson told him that "they hate [Piazza] and will make [him] suffer."  (*Id.*)  The initial review response denied the grievance and was signed by Lieutenant Anderson.  (Doc. 17-13, pp. 10–11.)  The Facility Manager's Appeal Response upheld the denial of the grievance.  (*Id.*, p. 8.)  The Secretary's Office of Inmate Grievances and Appeals (SOIGA) remanded the grievance because it included allegations of retaliation by Lieutenant Anderson, but the original grievance was assigned to Lieutenant Anderson for review.  (*Id.*, p. 6.)  On January 2, 2018, the grievance was remanded from SOIGA for further review and response.  (*Id.*, p. 5.)  On January 17, 2018, a second initial review response upheld the grievance in part and denied it in part.  (*Id.*, pp. 3–4.)

Specifically, it explained the evidence and stated that "[t]he suspension of Racheal Piazza's visits will not be addressed through the grievance process but needs to be handled in writing between Racheal Piazza and SCI Albion, specifically Superintendent Clark's office." (*Id.*, p. 4.) On February 12, 2018, the Final Determination was entered upholding the initial determination, stating that "[t]he record reflects that Ms. Piazza may write to the Superintendent regarding the suspension. You have failed to provide any evidence that you were retaliated against, therefore, your requested relief is denied." (*Id.*, p. 2.)

### 3. Grievance 777504

On December 18, 2018, Plaintiff filed grievance 777504 requesting that his wife's visitation be reinstated, or he be awarded $1,000,000.00. (Doc. 17-14, p. 5.) The requested relief was denied on January 4, 2019, with a citation to the fact that she had visited Plaintiff under the name Rachel Smith multiple times after his transfer to SCI-Huntingdon. (*Id.*, p. 6.) The Facility Manager's Appeal Response upheld this prior determination on March 6, 2019. (*Id.*, p. 7.) Plaintiff's final appeal was dismissed for failing to meet requirements and/or legible documentation on April 24, 2019. (*Id.*, p. 4.) On May 30, 2019, Plaintiff submitted a letter claiming to have submitted his final grievance appeal over a month ago. (*Id.*, p. 3.) On July 1, 2019, the SOIGA responded referring to the April 24, 2019 dismissal and sending Plaintiff a copy. (*Id.*, p. 2.)

### 4. Grievance 833310

On November 6, 2019, Plaintiff filed Grievance 833310 requesting that his visitation with his wife be reinstated. (Doc. 17-8, p. 4.) The request was denied in the initial review response. (*Id*., p. 5.) On January 22, 2020, the Facility Manager's Appeal Response stated that his appeal was found to be without merit. (*Id*., pp. 7–8.) On February 24, 2020, the final appeal decision denied his requested relief and stated that, "you may have your wife write to Supt. Kauffman for consideration of reinstatement but at this time she is suspended indefinitely." (Doc. 17-8, p. 2.) The record also includes an undated letter to Defendant asking that the visitation be reinstated because she was never convicted of any crime. (*Id*., p. 6.)

### 5. Requests to Staff Member

On August 29, 2019, Plaintiff sent a request to staff member form to Defendant asking that visitation be reinstated. (Doc. 17-10, p. 1.) It was denied. (*Id*.)

On March 23, 2020, Plaintiff sent a request to staff member form to Defendant asking that visitation be reinstated. (Doc. 17-9, p. 1.) It was denied. (*Id*.)

**B. Judgment Will be Entered Against Plaintiff In All Claims Arising from Misconduct B043042 and Grievance 77504.**

Defendant's initial argument is that Plaintiff failed to exhaust his administrative remedies in not appealing Misconduct B043042 and failing to properly appeal Grievance 77504.  (Doc. 18, pp. 11–15.)  The court agrees and finds that Plaintiff failed to exhaust his administrative remedies.  Therefore, the court will enter judgment in favor of Defendant in regards to any claims arising out of Misconduct B043042 and Grievance 77504.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Within the Pennsylvania Department of Corrections' ("DOC") system, various administrative policies exist which allow inmates to challenge aspects of their confinement. Those policies include: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Inmate Grievance Policy, DC-ADM 804; and (3) the Administrative Custody policy, DC-ADM 802. *See* PA. DEP'T OF CORR., Nos. DC-ADM 801, 802, 804, available https://www.cor.pa.gov (last accessed March

10, 2023).  DC-ADM 804 covers general grievances, DC-ADM 801 covers inmate

discipline, including the assessment of costs for medical care and losses caused by

inmate misconduct, and DC-ADM 802 covers administrative-custody procedures.

*Id.* Only DC-ADM 801 and 804 are implicated in this case in regards to

Misconduct B043042 and Grievance 777504 respectively.

### 1.  Misconduct B043042

DC-ADM 801 provides three levels of possible review. After a finding of

guilty, the inmate has fifteen days to submit a written appeal to the Program

Review Committee ("PRC").  *See* PA. DEP'T OF CORR., No. DC-ADM 801,

Inmate Discipline § 4(A)(4), available at http://www.cor.state.pa.us (last accessed

March 10, 2023).  There are only three valid bases for an appeal: (1) that the

procedures employed were contrary to law or DOC directives or regulations; (2)

that the punishment is disproportionate to the offense; or (3) that the findings of

fact were insufficient to support the decision. DC-ADM 801 § 5(A)(1).  Inmates

are not allowed to appeal findings of not guilty, and if they pled guilty then they

may appeal only on the first two grounds.  DC-ADM 801 § 5(A)(2).  After the

PRC issues its decision, the inmate then has seven days to appeal to the Facility

Manager.  DC-ADM 801 § 5(B)(1).  Once the Facility Manager makes his or her

decision, the inmate then has seven days to appeal to the DOC Chief Hearing

Examiner's Office, Office of Chief Counsel, which provides the final level of review.  DC-ADM 801 § 5(C)(3).

Here, the undisputed facts demonstrate that Plaintiff ended his administrative appeals on August 1, 2017 when the PRC found the sanction to be in accord with DC-ADM 801 and sustained the misconduct ruling.  There is no evidence, nor allegation, that Plaintiff filed his appeal with the Facility Manager within the seven days set forth in DC-ADM 801 § 5(B)(1).  Therefore, Plaintiff failed to exhaust his administrative remedies in regards to this misconduct.  The court will grant summary judgment on any claims stemming from Misconduct B043042.  Specifically, this results in summary judgment being entered against Plaintiff in the Fourteenth Amendment due process claims raised in the complaint.

### 2.  Grievance 777504

DC-ADM 804 permits any inmate to seek review of problems that may arise during the course of confinement.  *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804, available at http://www/cor.state.pa.us (last accessed March 10, 2023).  After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review.  This must occur within fifteen days after the events upon which the claims are based.  Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution.

Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the SOIGA.  An appeal to final review cannot be completed unless an inmate complies with all established procedures.  An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Here, the undisputed facts demonstrate that Plaintiff's final appeal of Grievance 777504 was dismissed on April 24, 2019 for failing to meet requirements and/or legible documentation.  (Doc, 17-14, p. 4.)  Specifically, Plaintiff failed to provide a copy of his appeal to the facility manager.  (*Id.*)  Since the final appeal was dismissed, he did not exhaust his administrative remedies. Therefore, the court will grant Defendant summary judgment in regards to all claims arising from Grievance 777504.

### C. Judgment Will be Entered Against Plaintiff In All Claims Arising from Grievance 694108.

Defendant asserts the affirmative defense that any claims arising out of Grievance 694108 are time-barred.

Federal civil rights claims brought pursuant to 42 U.S.C. § 1983 are subject to Pennsylvania's two-year statute of limitations applicable to personal injury

actions. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989); *see also* 42 Pa. Cons. Stat. Ann. § 5524.  On August 30, 2017, Plaintiff filed Grievance 694108 alleging that he and Rachel Piazza did not violate any visiting rules.  (Doc. 17-6, p. 2.)  Plaintiff then appealed this grievance through the administrative process with the final determination upholding the initial grievance determination was entered on February 12, 2018.  (*Id.*, p. 2.)  He then brought this action in 2021.  (Doc. 1.)  This is well outside the two-year statute of limitations.

The court will grant judgment in regards to all claims arising out of Grievance 694108.

### D. Judgment Will Be Entered Against Plaintiff In All Claims Arising from Grievance 833310.

The only grievance that Plaintiff properly exhausted and is not time-barred is Grievance 833310.  However, all claims for monetary damages are procedurally defaulted and not available as recovery in this action.  The court will consider the constitutional challenges addressed in the complaint as they pertain to this grievance with only injunctive and declaratory relief available.

#### 1.  Monetary Damages are Unavailable

Plaintiff's initial filing in Grievance 833310 does not request monetary compensation.  (Doc. 17-8, p. 4.)  Pa. Dept. of Cor. Policy DC-ADM-804 Sec. 1.A.11.d states that "[if] the inmate desires compensation or other legal relief

normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."

This court has granted summary judgment in favor of the defendants when a prisoner fails to seek monetary damages in his grievance. *See Mobley v. Snyder*, No. 1:13-cv-00772, 2015 WL 5123909, at *8–*9 (M.D. Pa. Sept. 1, 2015) (granting summary judgment in favor of defendants when a prisoner failed to clearly assert a request for monetary compensation in a grievance including allegations of inmate abuse); *Collins v. Walsh*, No. 1:09-cv-1932, 2012 WL 3536803, at *3 (M.D. Pa. Aug. 15, 2012) (granting summary judgment where the plaintiff failed to file a brief in opposition and did not request monetary relief in his initial grievance). "[W]here prison policy requires an inmate who seeks monetary compensation to request that relief in the inmate's initial grievance, failure to do so will bar claims from monetary compensation in federal court." *Camacho v. Beers*, No. 16-1644, 2018 WL 6618410, at *2 (W.D. Pa. Dec. 18, 2018).

The Third Circuit has rejected a procedural default claim premised upon an inmate's failure to request monetary relief in his initial grievance because "the grievance policy in effect at that time permitted—but did not require—an inmate to identify the relief sought (including monetary relief) in his grievance." *See Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (citing *Spruill v. Gillis*, 372 F.3d 218, 233–34 (3d Cir. 2004) (DC-ADM 804 at that time stated, "[t]he inmate may

include a request for compensation or other legal relief")); *see also Hobson v. Tiller*, No. 1:18-cv-00233-SPB-RAL, 2021 WL 2191282, at *7 (W.D. Pa. May 6, 2021), *report and recommendation adopted*, No. CV 18-233, 2021 WL 2190818 (W.D. Pa. May 31, 2021).  After the Third Circuit's decision, the Pennsylvania Bureau of Prisons amended its policy, including mandatory language regarding monetary relief, adhering to what was suggested by the Third Circuit in *Spruill. See Wright*, 729 F. App'x at 227; *see also Hobson*, 2021 WL 2191282, at *7.  In *Wright*, the Third Circuit upheld the district court's determination that "[the plaintiff] procedurally defaulted his claim for money damages by failing to request such relief in his grievance" because the "requirement is now mandatory."  *See Wright*, 729 F. App'x at 227; *see also Hobson*, 2021 WL 2191282, at *7.

When Plaintiff filed Grievance 833310 in November of 2019, he failed to request monetary damages.  This was after the policy was amended to make the request for monetary compensation mandatory in the grievance.  Therefore, Defendants have raised a valid affirmative defense and judgment shall be entered in their favor and against Plaintiff in all claims for monetary relief arising out of Grievance 833310.

### 2.  First Amendment Claim

Plaintiff's complaint raises a First Amendment freedom of association claim: "his rights to have meaningful communication and visitation with his child."  (Doc.

1, p. 8.)  Essentially, Plaintiff is alleging that because his wife's visitation is suspended, he is precluded from all communication with his minor children. However, without addressing the constitutionality of limiting visitation rights, the court finds that Plaintiff's allegations are not supported by the evidence.

Defendant provided an affidavit from Sergeant Westover, who is stationed at the visiting room at SCI-Huntingdon.  (Doc. 17-15.)  Sergeant Westover confirmed that Plaintiff's minor children can visit him with his brother, his mother, or his father acting as guardians.  (*Id*.)  Plaintiff has presented nothing to rebut this evidence.  (Docs. 24, 26.)  Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Here, there is no interference with Plaintiff's visitation with his minor children.  Therefore, the court will grant Defendant's motion for summary judgment as to the First Amendment association claim and enter judgment against Plaintiff.

### 3.  Equal Protection Claim

Plaintiff alleges that he is being treated differently than an allegedly similarly situated inmate whose spouse's visitation rights have been restored. (Doc. 1, p. 9–10.)  Plaintiff identifies this as a First Amendment violation, but equal protection claims against the state are raised under the Fourteenth

Amendment.  *See* U.S. Const. amend. XIV ("No State shall . . . deny to any person

within its jurisdiction the equal protection of the laws.").

To state a claim under the Equal Protection Clause, a plaintiff must allege

that (1) he is a member of a protected class, and (2) he was treated differently from

similarly situated inmates.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432,

439 (1985).  Despite alleging that he was treated differently than an allegedly

similarly situated inmate, Plaintiff has failed to allege that he is a member of any

protected or suspect class.  (Doc. 1, pp. 9–10.)  To the extent that Plaintiff's

complaint is read liberally to infer that prisoners are a protected class, the Third

Circuit has held that prisoners are not a "suspect class" under the equal protection

analysis.  *Abdul-Akbar v. McKelvie*, 239, F.3d 307, 317, (3d Cir. 2001).  Therefore,

the court will grant Defendant's motion for summary judgment and enter judgment

against Plaintiff on the equal protection claim.

### 4.  Intention Infliction of Emotional Distress

Plaintiff's complaint raises an intentional infliction of emotional distress

claim under state law.  (Doc. 1, p. 9.)  Defendant seeks to have judgment entered

against Plaintiff based on the doctrine of sovereign immunity.  (Doc. 18, pp. 17–

18.)  It is well-established that employees of the Commonwealth of Pennsylvania

are entitled to sovereign immunity from common law tort claims so long as they

are acting within the scope of their duties. *See* PA CONST. Art. 1, § 11; 1 Pa.

C.S.A. § 2310. As codified by the Pennsylvania General Assembly:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. Cons. Stat. Ann. § 2310.[2]  This grant of immunity "applies to Commonwealth

employees in both their official and individual capacities." *Larsen v. State*

*Employees' Ret. Sys.*, 553 F.Supp.2d 403, 420 (M.D. Pa. 2008).  *See also Nguien v.*

*Pennsylvania Dep't of Corr.*, 2021 WL 3563373, at *7 (W.D. Pa. Aug. 12, 2021)

("In other words, if the Commonwealth is entitled to sovereign immunity . . . then

its officials and employees acting within the scope of their duties are likewise

immune.") (quoting *Moore v. Commonwealth*, 538 A.2d 111, 115 (Pa. Commw.

Ct. 1988)).

---

[2] There are ten specifically delineated exceptions to sovereign immunity, 42 Pa. C.S.A. § 8522, none of which apply to this case. Those exceptions are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. C.S.A. § 8522.

There is nothing in the complaint or evidence to suggest that Defendant was not acting within the scope of his employment at all pertinent times.  *See Mitchell v. Luckenbill*, 680 F.Supp.2d 672, 682 (M.D. Pa. 2010) (identifying the requirements for an action to fall within the scope of employment under Pennsylvania law).  Consequently, Defendant is entitled to the protections afforded by sovereign immunity.  *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) ("The Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity.") (citing *Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. Ct. 1995)) (state prison officials enjoy sovereign immunity).  The court will grant Defendant's motion for summary judgment and enter judgment against Plaintiff on the intentional infliction of emotional distress claim.

## CONCLUSION

Defendant's motion for summary judgment will be granted.  Judgment will be entered against Plaintiff on all claims.  The case will be closed.  An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 31, 2023